IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BENNIE COY WILLIAMS and CARRIE   )
WILLIAMS,                        )
                                 )
     Plaintiffs,                 )
                                 )
v.                               )        No. 09-2618
                                 )
UNITED STATES OF AMERICA,        )
                                 )
     Defendant.                  )
                                 )

ORDER DENYING PLAINTIFFS' MOTION TO STRIKE AND GRANTING
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court in this action for medical malpractice are Defendant's Second Motion for Judgment on the Pleadings, filed May 12, 2010 and Plaintiffs' Motion to Strike Defendant's Second Motion for Judgment on the Pleadings filed May 19, 2010. (See Def.'s Second Mot. for J. on the Pleadings, ECF No. 20 ("Def.'s Mot."); Pls.' Mot. to Strike Def.'s Second Mot. for J. on the Pleadings, ECF No. 21 ("Pls.' Mot.").)  In their Motion to Strike, Plaintiffs also responded to Defendant's Motion. (See Pls.' Mot.)  Defendant responded to Plaintiffs' Motion to Strike on May 20, 2010. (United States' Resp., ECF No. 22.)  For the following reasons, the Court DENIES Plaintiffs' Motion to Strike and GRANTS Defendant's Motion for Judgment on the Pleadings.

I.   Background

Plaintiff Bennie Coy Williams ("Williams") is a veteran of the United States Army who sought medical treatment at the Veterans Affairs Medical Center in Memphis, Tennessee (the "VA"). (Compl. ¶¶ 3-6, ECF No. 1.) On March 13, 2007, Williams underwent an echocardiogram at the VA. (Id. ¶ 6.) Following that procedure, doctors diagnosed him with aortic stenosis and coronary artery disease and referred him for cardiothoracic surgery. (Id. ¶ 7.) Doctors informed Williams on June 1, 2007, that he would need an aortic valve replacement. (Id. ¶ 8.) Williams decided to have his faulty valve replaced with a biologic, rather than a synthetic, valve. (Id.)

Williams underwent surgery at the VA to implant a biologic valve replacement on June 5, 2007. (Id. ¶ 9.) Before his discharge on June 1, 2007, VA doctors determined that he had "some perivalvular leaks below his left main coronary sinus and significant, aortic insufficiency with diastolic flow reversal in the descending aortic." (Id. ¶ 10.) Doctors advised Williams that these problems would lessen with time and discharged him. (Id. ¶ 11.) Despite his physicians' assurances, on July 2, 2007, Williams returned to the VA for an examination after complaining of shortness of breath and frequent gagging. (Id.) Three days later, on July 5, VA doctors performed a left thoracentesis and drained nine hundred cubic centimeters of fluid from Williams until the procedure was

2

halted because of Williams' constant coughing. (Id.) Six weeks after his initial surgery, Williams again complained to the VA of "feelings of fatigue and episodes of 'flip/flopping' in his chest." (Id. ¶ 12.) Despite Williams' complaints and a subsequent July 26, 2007, appointment with the VA Nurse Clinic, the VA did nothing more to address his concerns. (Id. ¶¶ 12-13.)

Unsatisfied, Williams scheduled an August 20, 2007, appointment with Dr. Joseph Weinstein, a cardiologist in private practice. (Id. ¶ 14.) Weinstein performed a more thorough evaluation on September 17, 2007, and diagnosed Williams with a "severe, possible wide open aortic insufficiency." (Id. ¶ 15.) Later tests revealed that surgery was necessary to correct leakage. (Id.) On October 15, 2007, Weinstein admitted Williams to Methodist Hospital North in Memphis for surgery to "redo" the aortic valve replacement. (Id. ¶ 17.) Williams was discharged from Methodist Hospital on October 22, 2007. (Id.) Post-operative examinations revealed that the second surgery had reduced the leakage to trace levels. (Id. ¶ 18.)

Williams initiated his claim against the United States of America (the "United States" or the "government") by filing the required Form S95 with the Department of Veterans Affairs on April 30, 2008. See 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). The government denied his claim by certified letter on April 30,

2009.  (Compl. ¶ 2.)  Plaintiffs filed suit in this Court on September 22, 2009, alleging two counts of wrongdoing by the government.  (Id. ¶¶ 20-29.)  Williams seeks damages for the negligence, specifically medical malpractice, of VA doctors, including the medical expenses from the second operation to repair the faulty replacement valve, future medical expenses, pain and suffering, and loss of quality of life.  (Id. ¶¶ 22-25.)  Plaintiff Carrie Williams, Williams' wife, seeks damages for loss of consortium.  (Id. ¶¶ 28-29.)  Together, Plaintiffs request compensatory damages of $1.6 million.  (Id. ¶ 29.)

On January 25, 2010, the government filed a Motion for Judgment on the Pleadings (see ECF No. 9), which the Court denied on May 12, 2010 (see Order, ECF No. 19).  The same day, the government filed its Second Motion for Judgment on the Pleadings.  (See Def.'s Mot.)  Plaintiffs responded and filed the Motion to Strike now before the Court.  (See Pls.' Mot.)

## II.  Jurisdiction

Because Plaintiffs' claim for medical malpractice arises under the Federal Tort Claims Act, the Court has federal question jurisdiction over that claim.  See 28 U.S.C. § 1346(b)(1) (providing exclusive federal jurisdiction over claims against the United States for allegedly negligent acts); see also 28 U.S.C. § 1331.  Because federal question jurisdiction exists for Plaintiffs' medical malpractice claim, the Court has

4

supplemental jurisdiction over the state-law claim for loss of consortium.  See 28 U.S.C. § 1367(a).

**III. Motion to Strike**

Plaintiffs urge the Court to strike the government's Second Motion for Judgment on the Pleadings as untimely.  (Pls.' Mot. 1-2.)  The Court's Scheduling Order required the parties to file any "initial motions to dismiss" by April 8, 2010.  (Scheduling Order, ECF No. 8; Am. Scheduling Order, ECF No. 18); see Fed. R. Civ. P. 16(b).  Because the government filed its Second Motion for Judgment on the Pleadings after the deadline for initial motions to dismiss set by the Scheduling Order and because the Motion asserts arguments that could have been presented in the original Motion, Plaintiffs argue that the government's Second Motion is untimely.  (Pls.' Mot. 1-2.)

Although the same standard of review applies to motions to dismiss and motions for judgment on the pleadings, see Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009), the two motions are not the same.  Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss based on seven enumerated defenses, but any such motion "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings only "[a]fter the pleadings are closed — but early enough not to delay trial."

Fed. R. Civ. P. 12(c). "Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed." Maniaci v. Georgetown Univ., 510 F. Supp. 2d 50, 60 (D.D.C. 2007) (citing Fed. R. Civ. P. 7(a)); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings."). Because a motion to dismiss must be made before an answer, but a motion for judgment on the pleadings cannot be made until after an answer, they are not the same motion. Compare Fed. R. Civ. P. 12(b), with Fed. R. Civ. P. 12(c). The deadline for initial motions to dismiss in the Court's Scheduling Order does not apply to the government's Second Motion.

The Court's deadline for dispositive motions applies to the government's Second Motion because a motion for judgment on the pleadings is a dispositive motion. See Fitts v. Sicker, 232 F. App'x. 436, 439 (6th Cir. 2007) (referring to a motion for judgment on the pleadings as a dispositive motion); cf. Ogle v. Church of God, 153 F. App'x 371, 375 (6th Cir. 2005) (noting

6

that a "Rule 12(c) motion is a decision on the merits"). The Court set December 31, 2010 as the deadline for dispositive motions. (See Am. Scheduling Order.) By filing its Motion on May 19, 2010 (see Def.'s Mot.), the government met the applicable deadline in the Scheduling Order, (see Am. Scheduling Order); cf. Birge v. Dollar Gen. Corp., No. 04-2531, 2006 U.S. Dist. LEXIS 2983, at *3-4 (W.D. Tenn. Jan. 12, 2006) (rejecting as tardy a motion for judgment on the pleadings filed after the dispositive-motions deadline).

The government's Second Motion for Judgment on the Pleadings also comports with Rule 12(c)'s time requirements. See Fed. R. Civ. P. 12(c). The government filed its Second Motion on May 12, 2010 (see ECF No. 20), after the pleadings had closed with the government's Answer on December 4, 2009 (see ECF No. 6). See Fed. R. Civ. P. 12(c). Because trial in the present case is set for April 18, 2011 (see Am. Scheduling Order), the government moved for judgment on the pleadings "early enough not to delay trial." See Fed. R. Civ. P. 12(c); Mayfield v. Crawford, No. 5:07CV2775, 2008 U.S. Dist. LEXIS 111738, at *7 (N.D. Ohio July 3, 2008) (finding that a motion filed in May would not delay a trial scheduled for September). Having filed its Second Motion in accordance with the requirements of the Scheduling Order and Rule 12(c), the government's Second Motion is timely.

Plaintiffs also urge the Court to strike the government's Second Motion because it presents "the exact same arguments as set out in its original Motion for Judgment on the Pleadings but citing to an earlier version" of the Tennessee statute that arguably governs their claims.  (Pls.' Mot. 2.)  Plaintiffs correctly argue that, in its original Motion for Judgment on the Pleadings, the government could have raised the arguments it raises in its Second Motion.  (See id.)  Plaintiffs have not argued, however, that they are prejudiced by the government's raising those arguments now.  Moreover, "if it seems clear that the motion may effectively dispose of the case on the pleadings, the district court should permit it regardless of any possible delay consideration of the motion may cause."  5C Wright & Miller, Federal Practice & Procedure § 1367; cf. Hahn v. Star Bank, 190 F.3d 708, 719 (6th Cir. 1999) ("Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.") (citing Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936)).  Because the government's Second Motion raises a purely legal question that potentially disposes of Plaintiffs' action, their motion to strike is not well-taken.  Therefore, the Court DENIES Plaintiffs' Motion to Strike Defendants' Second Motion for Judgment on the Pleadings.

**IV.  Motion for Judgment on the Pleadings**

### A. Standard of Review

"The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Monroe Retail, 589 F.3d at 279 (internal quotation marks and citation omitted).  In addressing a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true.  League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  This standard requires more than bare assertions of legal conclusions.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (citing Twombly, 550 U.S. at 555.)  Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to

survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

## B. Plaintiffs' Medical Malpractice Claim

Plaintiffs allege two counts of wrongdoing by the VA, the first being medical malpractice. (Compl. ¶¶ 20-26.) Tennessee has codified a cause of action for medical malpractice, adding elements and procedural requirements that differ from a common law cause of action for negligence. See Tenn. Code. Ann. §§ 29-26-115, et seq. Under the statutory provision at issue in the present case, the pre-amendment version of Tennessee Code Annotated § 29-26-122 (the "Act" or the "Tennessee Act"), "within ninety (90) days after filing a complaint in any medical malpractice action in which expert testimony is required by Section 29-26-115, the plaintiff or plaintiff's counsel shall

file a Certificate of Good Faith" with the court.[1]   2008 Tenn.
Pub. Acts 919.   The certificate must state that the plaintiff or
his attorney has consulted with a least one expert, who has
provided a signed, written statement in which the expert opines
that there is a good faith basis for plaintiff's claim, based on
the medical records available to the expert, and that the expert
is competent to give that opinion.   See id.   "The failure of a
plaintiff to file a Certificate of Good Faith in compliance with
this section shall, upon motion, make the action subject to
dismissal with prejudice."   Id.   The Governor signed the Act on
May 15, 2008, with the provision that it was to "take effect
October 1, 2008, and . . . apply to all actions filed on or
after that date."   Id.

        Because Plaintiffs have not filed a certificate of good
faith with the Court, the government has moved for judgment on
the pleadings.   (Def.'s Mot. 6).   In response, Plaintiffs make
three alternative arguments: 1) that the Act does not apply to
claims brought under the Federal Tort Claims Act ("FTCA")
generally, 2) that, even if Act applies to FTCA claims

---

[1] The Tennessee General Assembly amended Tennessee Code Annotated § 29-26-122 in 2009.   See 2009 Tenn. Pub. Acts 425.   Under the post-amendment version, a plaintiff must file a certificate of good faith contemporaneously with the complaint.   See § Tenn. Code Ann. 29-26-122.   That version, however, applies only to "actions in which notice is given on or after July 1, 2009."   See 2009 Tenn. Pub. Acts 425.   Because Plaintiffs gave notice of their potential claim on April 30, 2008, the Court has held that the post-amendment version of Tennessee Code Annotated § 29-26-122 does not apply.   See Williams v. United States, No. 09-2618, 2010 U.S. Dist. LEXIS 46898, at *6-9 (W.D. Tenn. May 12, 2010).

generally, it does not apply to their claim specifically, and 3) that, even if the Act applies to their claim, they have complied with the Act's purposes.[2]  (Pls.' Mot. 5-10.)

### 1. Tennessee Act and the FTCA

Absent waiver, the doctrine of sovereign immunity insulates the government from suit.  Dep't of the Army v. Blue Fox, 525 U.S. 255, 260 (1998) (citing Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994)).  By enacting the FTCA, Congress waived the government's sovereign immunity for certain claims, subject to specific limitations.  See Sharp ex rel. Estate of Sharp v. United States, 401 F.3d 440, 442-443 (6th Cir. 2005) (citing, as an example, U.S.C. § 2680(a)'s exception for discretionary functions); cf. United States v. Kubrick, 444 U.S. 111, 118 (1979) (noting that courts must not take it upon themselves to extend the waiver of sovereign immunity beyond the limits Congress intended).  The FTCA allows suits against the United States for personal injury caused by negligent acts or omissions of federal agents acting within the scope of their duties.  See 28 U.S.C. §§ 1346, 2671 et seq.

Under the FTCA, suits for government negligence may be brought only in federal court, and liability attaches only "under circumstances where the United States, if a private

---

[2] Plaintiffs do not argue that their Complaint does not allege a medical malpractice action in which expert testimony is required by Tennessee Code Annotated § 29-26-115.  See 2008 Tenn. Pub. Acts 919.

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). As interpreted by the Supreme Court, the law of the state where the alleged negligent act or omission occurred determines the government's liability under the FTCA. Molzof v. United States, 502 U.S. 301, 305 (1992); see also Young v. United States, 71 F.3d 1238, 1242 (6th Cir. 1995) (citations omitted) (noting that "domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred"). Because the allegedly negligent acts giving rise to Plaintiffs' claims occurred in Tennessee, Tennessee substantive law applies. (See Compl. ¶¶ 4, 6-13.)

Although the parties do not dispute that Tennessee substantive law governs the Plaintiffs' claim, they dispute whether the Tennessee Act's certificate requirement applies to claims brought under the FTCA. See 2008 Tenn. Pub. Acts 919. Plaintiffs argue that the Act does not apply because it is procedural, not substantive, and that the FTCA's administrative procedure governs their claim instead. (Pls.' Mot. 7-8).

13

Under the doctrine of Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938), federal courts apply state substantive law and federal procedural law when adjudicating claims based on diversity jurisdiction. Federal court jurisdiction in FTCA claims exists by virtue of the FTCA itself, rather than the parties' diversity. See 28 U.S.C. § 1346(b)(1). Because the FTCA directs federal courts to determine the United States' liability according to state substantive law, however, courts must make the same distinction between procedural and substantive law to determine what law governs. See 28 U.S.C. §§ 1346(b)(1), 2674; Molzof v. United States, 502 U.S. at 305; cf., e.g., Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539 (10th Cir. 1996) (applying the Erie analysis to determine whether a state law was substantive and therefore applied to FTCA claims or was procedural and did not).

To determine whether a law is substantive or procedural, courts ask whether it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." Guar. Trust Co. v. York, 326 U.S. 99, 109 (1945). However, the Supreme Court has cautioned against strict application of this outcome-determinative test in all cases. See, e.g., Byrd v. Blue Ridge Rural Electric Coop., Inc., 356 U.S. 525, 535-37 (1958)

14

(rejecting strict application of the outcome-determinative test, asking whether a state law was "bound up with rights and obligations in such a way that its application in the federal court is required," and ultimately applying federal law because of "affirmative countervailing considerations" of federal policy). Courts generally conduct a "relatively unguided Erie choice," applying the outcome-determinative test in light of Erie's twin policies of discouraging forum-shopping and avoiding inequitable administration of the law. Hanna v. Plumer, 380 U.S. 460, 468 (1965).

When faced with a potential conflict between a state law and a federal statute, however, "the first and chief question for the district court's determination is whether the federal statute is 'sufficiently broad to control the issue before the Court.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (quoting Walker v. Armco Steel Corp., 446 U.S. 740, 749-750 (1980)). To answer that question, courts interpret the federal statute to determine whether Congress intended it to cover the point in dispute. Id. If Congress intended to address the issue, the court simply asks whether the statute comports with the Constitution. Id. (citing Hanna, 380 U.S. at 471). If the federal statute does not cover the point in dispute, "the district court then proceeds to evaluate whether application of federal judge-made law would disserve the so-

15

called 'twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"   Id. at 27 n.6 (quoting Hanna, 380 at 468).   "If application of federal judge-made law would disserve these two policies, the district court should apply state law." Id. (citing Walker, 446 U.S. at 752-753).

Plaintiffs assert that the FTCA controls the issue before the Court. (See Pls.' Mot. 7-8.) They argue that the Tennessee Act's requirement that they file a certificate of good faith within ninety days of filing their complaint conflicts with the pre-suit administrative procedure under the FTCA and its accompanying regulations. (Id.) Plaintiffs emphasize that, had they followed the Tennessee Act's procedure and not the FTCA's administrative procedure, their federal action would have failed. (Id.); see 28 U.S.C. §§ 1346(b)(1), 2675(a).

The FTCA and its accompanying regulations establish an administrative procedure that plaintiffs must follow before bringing a negligence action against a federal agency. See 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). Before filing suit, a plaintiff must present his claim to the appropriate federal agency using an executed Standard Form 95. Id. If the agency denies the claim, the plaintiff has six months from the date of final denial to file an action against the United States. 28 U.S.C § 2401. Although the FTCA and its accompanying

16

regulations establish this pre-suit requirement, nothing in their plain text addresses the filing of the action itself or establishes any post-filing requirements. By contrast, the Tennessee Act establishes a post-suit requirement — that plaintiffs alleging medical malpractice file a certificate of good faith within ninety days of filing the complaint. See 2008 Tenn. Pub. Acts 919.

Considering a Michigan medical malpractice statute similar to the Tennessee Act, a district court held that Michigan's certification requirement did not conflict with the FTCA's administrative procedure. See Williams v. United States, No. 4:01 cv 23, 2001 U.S. Dist. LEXIS 10454, at *17-21 (W.D. Mich. July 16, 2001). Like the Tennessee Act, the Michigan statute required a plaintiff alleging medical malpractice to file an affidavit of merit signed by a health professional, affirming that the health professional believed the defendant had violated the applicable standard of care. See id. at *11-12 (citing Mich. Comp. Laws. § 600.2912d). Unlike the Tennessee Act, however, which allows a plaintiff to file a certificate of good faith up to ninety days after filing the complaint, the Michigan statute required the plaintiff to file the affidavit of merit contemporaneously with the complaint. Id. Although the district court recognized that "Michigan's requirements may be viewed as more restrictive," it nonetheless concluded that "they

17

are not inconsistent with the federal regulations issued by the Department of Justice applicable to claims asserted under the FTCA." Id. at *18.

There is less potential conflict between the FTCA's pre-suit administrative procedure and the Tennessee Act than between the FTCA procedure and the Michigan statute at issue in Williams, 2001 U.S. Dist. LEXIS 10454. Because the Michigan statute required a plaintiff to file the affidavit of merit contemporaneously with the complaint, the statute arguably imposed on the plaintiff a pre-suit requirement of obtaining the affidavit, in addition to the FTCA's pre-suit requirement. See Mich. Comp. Laws. § 600.2912d. Under the Tennessee Act, however, a plaintiff has ninety days from filing the complaint to obtain and file a certificate of good faith and therefore need not obtain the certificate before initiating the action. See 2008 Tenn. Pub. Acts 919. Therefore, the Tennessee Act cannot be read as imposing any additional pre-suit requirement on plaintiffs alleging medical malpractice under the FTCA.

Like the Michigan statute, the Tennessee Act "may be viewed as more restrictive" than the FTCA's administrative procedure, but the Act's post-suit requirement is not inconsistent with the FTCA's pre-suit requirement. See Williams, 2001 U.S. Dist. LEXIS 10454, at *17-21. There is no "direct collision" between a federal law requiring that a plaintiff present his claims to

18

the relevant agency before suing and a state law requiring that, within 90 days of filing the complaint, the plaintiff also file a certificate of good faith.  See Walker, 446 U.S. at 749; Hanna, 380 U.S. at 472.  The Tennessee Act and the FTCA and its accompanying regulations "can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict."  See Walker, 446 U.S. at 752.  Because the FTCA is not "sufficiently broad to control the issue" of whether Plaintiffs must file a certificate of good faith when bringing a negligence claim under the FTCA,[3] the Court must conduct a "relatively unguided" Erie analysis.  Stewart Org., 487 U.S. at 27 n.6; cf. Hanna, 380 U.S. at 468.

If the Court were to apply the Tennessee Act, it would "significantly affect the result of" the present litigation. See Guar. Trust, 326 U.S. at 109.  Like a statute of limitations, which is substantive for Erie purposes, the Tennessee Act bars recovery for plaintiffs who fail to comply with it.  See Phelps v. McClellan, 30 F.3d 658, 661 (6th Cir. 1994) (citing Guar. Trust, 326 U.S. at 110-111) (explaining that statutes of limitations are substantive under Erie).  Because failure to comply with the Act results in dismissal, it is outcome-determinative, which weighs in favor of concluding that

---

[3] Because Plaintiffs have not raised the issue, the Court need not determine whether the Act conflicts with any of the Federal Rules of Civil Procedure.

the Act is substantive, rather than procedural. <u>See</u> 2008 Tenn. Pub. Acts 919; <u>cf.</u> <u>Bierbauer v. Manenti</u>, No. 4:09CV2142, 2010 U.S. LEXIS 108540, at *28 (N.D. Ohio Oct. 12, 2010) (explaining that an Ohio statute requiring a plaintiff alleging medical malpractice to file an affidavit of merit when filing a complaint is outcome-determinative because it mandates dismissal); <u>Daniel v. United States</u>, No. 1:09 CV 2371, 2010 U.S. Dist. LEXIS 10242, at *7-8 (N.D. Ohio Feb. 5, 2010) (same); <u>Lee v. Putz</u>, No. 1:03-CV-267, 2006 U.S. Dist. LEXIS 43449, at *17 (W.D. Mich. June 27, 2006) (explaining that Michigan's medical-malpractice certification statute is outcome-determinative because failure to comply results in dismissal).

In making an <u>Erie</u> choice, the outcome-determinative test is applied in light of <u>Erie</u>'s goals of discouraging forum-shopping and avoiding inequitable administration of the laws. <u>See</u> <u>Hanna</u>, 380 U.S. at 468. Because the FTCA vests federal courts with exclusive jurisdiction over claims brought against the United States, forum-shopping is not a concern in FTCA cases. <u>See</u> 28 U.S.C. §1346(b)(1). Faced with a choice between a forum that requires the filing of a certificate of good faith within ninety days and a forum without such a requirement, however, a plaintiff would prefer the forum without the requirement because the plaintiff would avoid the cost of obtaining the certificate and have more time to develop his case. Courts considering

similar state certification statutes have concluded that, if the statutes were not applied in federal court, plaintiffs would seek to avoid state court by filing in federal court when a federal court would have jurisdiction over their claims based on diversity of citizenship.  See, e.g., Lee, 2006 U.S. Dist. LEXIS 43449, at *18.  Courts have also concluded that allowing a plaintiff in federal court to avoid a state certification statute merely because, by happenstance, the parties' citizenship is diverse, even though a non-diverse plaintiff would be required to comply with the certification statute in state court, constitutes inequitable administration of the laws.  See, e.g., id., at *18-19.  Therefore, the twin aims of Erie weigh in favor of concluding that the Tennessee Act is substantive, not procedural.  See Hanna, 380 U.S. at 468.

Courts conducting an Erie analysis also consider whether the state law at issue is "bound up with [state-created] rights and obligations in such a way that its application in the federal court is required."  Byrd, 356 U.S. at 535.  Tennessee enacted the Act with a package of other medical malpractice reforms.  See 2008 Tenn. Pub. Acts 919.  Together, the reforms were intended "to dispose of frivolous suits before any party incurred substantial litigation expenses."  See Jenkins v. Marvel, 683 F. Supp. 2d 626, 639 (E.D. Tenn. 2010) (citing News Release, Tenn. S. Republican Caucus (Apr. 24, 2008)); Rebecca

Blair, Med-Mal Obstacles, Tenn. Bar. J., Sept. 2008, at 18 (noting that the reforms were "designed to reduce the number of 'frivolous' suits filed"). Viewed in this context, Tennessee's requirement that plaintiffs file a certificate of good faith within ninety days of filing the complaint constitutes a "substantive decision by that State." Walker, 446 U.S. at 751. Because there are no "affirmative countervailing considerations" of federal policy at issue, see Byrd, 356 U.S. at 537, the Tennessee Act's certificate requirement is bound up with the state-defined cause of action for medical malpractice, see id. at 535, which weighs in favor of applying the Act in federal court.

For these reasons, district courts in the Sixth Circuit have concluded that malpractice certification statutes similar to the Tennessee Act are substantive, not procedural. See Bierbauer, 2010 U.S. LEXIS 108540, at *29 (holding that an Ohio certification statute is substantive and applies in FTCA actions); Daniel, 2010 U.S. Dist. LEXIS 10242, at *8 (same); Lee, 2006 U.S. Dist. LEXIS 43449, at *20 (holding that a Michigan certification statute is substantive and applies in diversity actions); Williams, 2001 U.S. Dist. LEXIS 10454, at *15 (holding that a Michigan malpractice certification statute is substantive and applies in FTCA actions) (internal citations omitted in all).

22

Federal courts outside the Sixth Circuit have also concluded that state certification statutes similar to the Tennessee Act are substantive, not procedural. See, e.g., Hill v. Smithkline Beecham Corp., 393 F.3d 1111, 1117 (10th Cir. 2004) (holding that a Colorado law requiring a plaintiff alleging medical malpractice to file a certificate of review with a complaint is substantive and applies in FTCA actions); Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000) (holding that a New Jersey statute requiring medical-malpractice plaintiffs to file an affidavit of merit within sixty days of filing a complaint is substantive and applies in diversity actions); Lewis v. Ctr. for Counseling & Health Res., No. C08-1086 MJP, 2009 U.S. Dist. LEXIS 67415, at *8-11 (W.D. Wash. July 28, 2009) (holding that a Washington statute requiring medical-malpractice plaintiffs to file a certificate of merit with a complaint is substantive and applies in diversity actions); Lopez v. Brady, No. 4:CV-07-1126, 2008 U.S. Dist. LEXIS 73759 (M.D. Pa. Sept. 25, 2008), at *39-41 (holding that a Pennsylvania law requiring medical-malpractice plaintiffs to file a certificate of merit within sixty days of filing a complaint is substantive and applies in FTCA actions); Smith v. Planned Parenthood, 225 F.R.D. 233, 241 (E.D. Mo. 2004) (holding that a Missouri statute requiring medical-malpractice plaintiffs to file an affidavit certifying a claim's merits within ninety

days of filing a complaint was substantive and applied in diversity actions); Oslund v. United States, 701 F. Supp. 710, 714 (D. Minn. 1988) (holding that a Minnesota statute requiring medical-malpractice plaintiffs to file an expert review affidavit within sixty days of filing a complaint is substantive and applies in FTCA actions) (internal citations omitted); cf. Finnegan v. Univ. of Rochester Med. Ctr., 180 F.R.D. 247, 249 (W.D.N.Y. 1998) (applying a New York law requiring medical-malpractice plaintiffs to file a certificate of merit with the complaint applies in federal court without conducting an Erie analysis) (internal citations omitted in all).

In enacting the FTCA, Congress expressed its intent that the United States be held liable only to the extent a private person would also be liable under the substantive law of the state where the conduct giving rise to the claim occurred. See 28 U.S.C. §§ 1346(b)(1), § 2674. Under the Tennessee Act, a plaintiff filing a medical malpractice claim in state court would be required to file a certificate of good faith to recover from a private defendant. See 2008 Tenn. Pub. Acts 919. Because the Tennessee Act is outcome-determinative and failing to apply it in federal court would encourage forum-shopping and result in inequitable administration of the laws, and because the Act is bound up with rights and obligations created by the State of Tennessee, the Act is substantive. For these reasons,

the Tennessee Act applies in federal court to claims brought under the FTCA.

## 2. Application to Plaintiffs' Claim

Plaintiffs alternatively argue that the Tennessee Act does not apply to their claim because they filed Standard Form 95 with the Department of Veterans Affairs on April 30, 2008, well before the Act went into effect on October 1, 2008. (Id. 5-6.) The plain language of the Act makes clear that it applies only to "actions filed on or after" October 1, 2008. See 2008 Tenn. Pub. Acts 919. If the Plaintiffs had filed their action before that date, the Act would not apply to their claim, and they need not have filed a certificate of good faith.

By requiring a person to present a claim to the appropriate federal agency before initiating an action against the United States, the plain language of the FTCA and its accompanying regulations make clear that these two acts are not the same. See 28 U.S.C. § 2675; 28 C.F.R. § 14.2(a). In federal court, an action is commenced only by filing a complaint. Fed. R. Civ. P. 3. Although Plaintiffs presented their claim to the Department of Veterans Affairs on April 30, 2008, they did not file an action against the government until September 22, 2009, when they filed their Complaint (see Compl.). Because the Act applies to actions filed after October 1, 2008, it applies to Plaintiffs' claim. See 2008 Tenn. Pub. Acts 919.

### 3. Plaintiffs' Compliance with the Act

Plaintiffs alternatively argue that they "have complied in practical application with the purpose of the Act" by providing the government with various medical records and notice of their claim through the FTCA's administrative procedure.   Therefore, they argue, requiring them to file a certificate of good faith would be a mere procedural formality.  (Pls.' Mot. 8-9.)

Reforms adopted contemporaneously with the Act require a plaintiff alleging medical malpractice to "give written notice of such potential claim to each health care provider against whom such potential claim is being made at least sixty (60) days before the filing of a complaint" and, on filing the complaint, to provide complete copies of the plaintiff's medical records to the defendant.  See 2008 Tenn. Pub. Acts 919.  The Tennessee General Assembly enacted these requirements "to provide notice to potential parties and to facilitate early resolution of cases through settlement."  Jenkins, 683 F. Supp. 2d at 639 (explaining the purpose of the notice and medical records provisions that were ultimately codified at Tenn. Code Ann. § 29-26-121).  By providing notice and turning over their medical records through the FTCA's administrative procedure, Plaintiffs have arguably complied with the purposes of the notice and medical-records provisions enacted contemporaneously with the Tennessee Act.

26

Unlike those provisions, however, Tennessee did not adopt the Act for the purpose of providing a defendant notice of a possible claim and encouraging settlement.  Although a plaintiff may file a certificate of good faith contemporaneously with the complaint, the plaintiff has up to ninety days after filing the complaint to file the certificate.  See 2008 Tenn. Pub. Acts 919.  Even if a plaintiff files the certificate of good faith at the earliest possible moment (i.e., when filing the complaint), the defendant has received notice of the possible claim by registered mail at least sixty days before the complaint is filed.  Id.  Thus, the Act's certificate requirement cannot be reasonably construed as a provision adopted for the purpose of providing a defendant notice of a possible claim and encouraging settlement.

The Act's certificate requirement exists "to ensure that suits proceeding through litigation have some merit." Jenkins, 683 F. Supp. 2d at 639.  The plain text of the Act itself evidences this purpose.  See 2008 Tenn. Pub. Acts 919.  The certificate of good faith must state that a plaintiff or his attorney has consulted with a least one expert, who has provided a signed, written statement in which the expert opines that there is a good faith basis for the plaintiff's claim, based on the available medical records, and that the expert is competent to give such an opinion.  See 2008 Tenn. Pub. Acts 919.

27

Considering the content of the certificate itself, the Act exists to ensure that a plaintiff's claim has merit, not to ensure that a defendant has notice of the claim and an opportunity to engage in settlement negotiations. See id.; Jenkins, 683 F. Supp. 2d at 639; cf. News Release, Tenn. S. Republican Caucus (Apr. 24, 2008) (explaining that the legislature enacted the package of reforms to reduce "meritless medical malpractice lawsuits"); Rebecca Blair, Med-Mal Obstacles, Tenn. Bar. J., Sept. 2008, at 18. Plaintiffs do not argue that, by following the FTCA's administrative procedure, they have fulfilled that purpose.

Plaintiffs correctly note that the Act permits courts to extend beyond ninety days the time within which a certificate of good faith must be filed. See Tenn. Pub. Acts 919; (Pls.' Mot. 9). However, such an extension is permitted only if the court "determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown." See id. No Tennessee or federal court has interpreted the meaning of "good cause" under the Act. Plaintiffs argue that requiring them to file a certificate of good faith would be a mere formality, but offer no facts or other rationale for extending the time to file the certificate. (See Pls.' Mot. 8-

28

9.)  Whatever the parameters of "good cause" under the Act, Plaintiffs have not shown it, and an extension is not warranted.

Plaintiffs were required to file a certificate of good faith within ninety days of filing their complaint, which they failed to do.  See 2008 Tenn. Pub. Acts. 919 § 1.  "The failure of a plaintiff to file a Certificate of Good Faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice."  2008 Tenn. Pub. Acts. 919 § 1. Because the government has so moved, Plaintiffs' medical malpractice claim must be dismissed with prejudice.  See id.; cf. Maliani v. Vanderbilt Univ. Med. Ctr., No. 3:10-0235, 2010 U.S. Dist. LEXIS 110259, at *12-13, 17-18 (M.D. Tenn. Oct. 12, 2010) (dismissing with prejudice a plaintiff's malpractice claim for failure to file a certificate of good faith under the post-amendment version of the Tennessee Act, where jurisdiction was based on diversity).

### C. Plaintiffs' Other Claim

Plaintiffs allege a second count of wrongdoing for Carrie Williams' loss of consortium.  As with Plaintiffs' medical malpractice claim, the law of the state where the alleged negligent act or omission occurred determines the government's liability under the FTCA.  See 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674; Molzof, 502 U.S. 301, 305 (1992); see also Young, 71 F.3d at 1242 (6th Cir.1995) (noting that "domestic liability on

the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred"). Because the allegedly negligent acts giving rise to Carrie Williams' claim occurred in Tennessee (see Compl. ¶¶ 4, 6-13), Tennessee substantive law applies.

Under Tennessee law, "there shall exist in cases where such damages are proved by a spouse, a right to recover for loss of consortium." Tenn. Code Ann. § 25-1-106. Tennessee courts have defined loss of consortium as "the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation." McPeek v. Lockhart, No. E2004-01034-COA-R3-CV, 2006 Tenn. App. LEXIS 276 (Tenn. Ct. App. Apr. 28, 2006) (quoting Jackson v. Miller, 776 S.W.2d 115, 116-17 (Tenn. Ct. App. 1989)).

Although loss of consortium is a cause of action distinct and separate from the injured spouse's claim, it remains a derivative claim. See Hunley v. Silver Furniture Mfg. Co., 38 S.W.3d 555, 557-58 (Tenn. 2001) (citing Tuggle v. Allright Parking Sys., 922 S.W.2d 105, 108 (Tenn. 1996)); Clark v. Shoaf, 209 S.W.3d 59, 62 (Tenn. Ct. App. 2006) (noting that, although a claim for loss of consortium is a distinct and independent action, it is derivative in that it originates from or owes its

30

existence to the spouse's claim).  A spouse seeking recovery for loss of consortium cannot recover unless the defendant has been held liable to the injured spouse.  See <u>Swafford v. City of Chattanooga</u>, 743 S.W.2d 174, 178 (Tenn. Ct. App. 1987) ("[A] husband's or wife's claim for loss of consortium will always be 'derivative' in the sense that the injuries to his or her spouse are an element and must be proved . . . .").

Plaintiffs cannot prove that the government caused Williams' injuries because Williams' medical malpractice claim has been dismissed.  For that reason, Carrie Williams' claim for loss of consortium also fails, and Plaintiffs' second court of wrongdoing against the government must be dismissed.  See <u>DeJesus v. Geren</u>, No. 3:08cv0043, 2008 U.S. Dist. LEXIS 48870, at *58 (M.D. Tenn. June 23, 2008) (dismissing a spouse's claims for loss of consortium where injured spouse's claims were subject to dismissal or summary judgment); <u>Wentz v. Best W. Int'l, Inc.</u>, No. 3:05-cv-368, 2007 U.S. Dist. LEXIS 19894, at *10-12 (E.D. Tenn. Mar. 20, 2007) (dismissing a spouse's claims for loss of consortium where injured spouse's claims were subject to dismissal)

**V.   Conclusion**

Based on the foregoing, the Court DENIES Plaintiffs' Motion to Strike Defendant's Second Motion for Judgment on the

Pleadings and GRANTS Defendant's Second Motion for Judgment on the Pleadings.  Plaintiffs' claims are DISMISSED WITH PREJUDICE.

So ordered this 16th day of November, 2010.


                            s/ Samuel H. Mays, Jr.
                            SAMUEL H. MAYS, JR.
                            UNITED STATES DISTRICT JUDGE

32